NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

25-P-362

PAUL NOVAK, trustee,[1] & another[2]

vs.

DAVID T. DALY & others.[3]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Since the 1930s and until recently, two residential dwelling structures, the "front structure" and the "rear structure," have stood on the defendant Carol Tamagna's property located on 10th Street on Plum Island in the town of Newbury (the locus).  The rear structure was razed after a fire in 2019. On July 21, 2022, the town's zoning board of appeals granted Tamagna and David T. Daly a special permit to reconstruct the

_____

[1] Of the Thirteen Tenth St. Nominee Trust.

[2] Christine M. Florio, trustee of the 30 Northern Boulevard Nominee Trust.

[3] Carol Tamagna, and the Zoning Board of Appeals of Newbury. Carol Tamagna and the Zoning Board of Appeals of Newbury did not file a brief or otherwise participate in this appeal.

rear structure and demolish and reconstruct the front structure, significantly raising the heights by reconstructing the structures on pilings, and adding an additional bedroom and a roof deck to each structure, while reducing and in some instances eliminating setback violations and reducing the overall lot coverage.

The plaintiffs, Christine Florio, as trustee of the 30 Northern Boulevard Nominee Trust, an abutter to the rear of the locus, and Paul Novak, as trustee of the Thirteenth Tenth St. Nominee Trust, an abutter to an abutter within 300 feet, filed an appeal in the Superior Court. They contended essentially that the board had exceeded its authority by allowing a significant increase in density and intensity of use on an undersized lot in excess of what is permitted by the town's zoning bylaw. They alleged harm related to noise and privacy, density, traffic, and fire safety. A Superior Court judge dismissed the appeal due to lack of standing without addressing the merits of the appeal. We affirm.

Background. The parties are well acquainted with the facts as detailed in the judge's thorough decision, the parties' statement of undisputed facts, and the undisputed facts set forth in the joint pretrial memorandum. We do not repeat them in detail here. Briefly, Plum Island is a barrier beach that, in the 1920s, was developed by a grid of predominately small

2

lots into a beach community accessed from the mainland by a single road. The locus contains 5,688 square feet and has sixty-five feet of frontage on 10th Street. Although current zoning requires a lot size of 40,000 square feet and frontage of 125 feet, the locus and the two original structures legally exist as a lawful prior nonconforming lot and lawful prior nonconforming uses. The two original residential structures existed on the property well before the town's zoning bylaw was adopted in 1959.

The locus has been owned by Carole Tamagna since 1967. She authorized David T. Daly, and his business, Daly Holding Group (collectively Daly), to reconstruct the demolished rear structure and to demolish and reconstruct the front structure. More specifically, Daly proposes to (1) reconstruct both buildings on pilings, transforming the rear building -- originally a two-bedroom, twenty-five foot high structure -- into a thirty-five foot high structure with three bedrooms and a roof deck; and (2) reconstruct the front structure, expanding it from a 440 square foot, one-bedroom residential structure to a 1,131.5 square foot, two-bedroom residential structure with a roof-top deck -- more than doubling the height from fourteen feet to over thirty-four feet. Changes to the dimensions and location of the structures will reduce the setback nonconformities of the preexisting structures -- the front

3

dwelling's setbacks will conform with the side and rear property line setback requirements and the front setback nonconformity will be reduced; and the proposed rear dwelling's setback will conform with the current bylaw, eliminating a prior encroachment onto Florio's rear abutting lot. In short, the proposed structures will be narrower, but significantly taller than the original structures and they will be placed on the property in locations that will reduce setback nonconformities.

In granting the special permit, the board noted that the applicant has a right to rebuild after fire and that the special permit is required for the additional height proposed. The board concluded that where the proposed plan improves "existing nonconformities" as noted, the special permit "may be granted for the proposed project . . . without substantial detriment to the public good, and that the requested relief can be granted without nullifying or substantially derogating from the intent or purpose of Newbury's By-Law."

The plaintiff Novak owns 13 10th Street, located across the street and diagonally to the west of the locus. It is within three hundred feet of the locus, and as such, the judge found that Novak enjoys a presumption of standing. The plaintiff Florio owns the abutting lot to the rear of the locus, 9 12th Street. It is less than 5,000 square feet, and the record is

4

unclear as to whether it may be developed.  She, too, enjoys a presumption of standing.

In dismissing the plaintiffs' complaint, the judge reasoned that the plaintiffs are not persons aggrieved under G. L. c. 40A where their presumption of standing had been rebutted and they had failed to demonstrate a specific harm to them that is not shared by the rest of the neighborhood.

Discussion.  Persons aggrieved by a special permit decision have standing to contest it if they suffer "some infringement of [their] legal rights" that is "more than minimal or slightly appreciable," "and the right or interest . . . [is] one that G. L. c. 40A is intended to protect" (quotations and citations omitted).  Murchinson v. Zoning Bd. of Appeals of Sherborn, 485 Mass. 209, 213 (2020).  A trial "judge's findings of aggrieved [person] status are 'entitled to deference'" (citation omitted). Wendy's Old Fashioned Hamburgers of New York, Inc. v. Board of Appeal of Billerica, 454 Mass. 374, 384 (2009).  Indeed, "[w]hether an individual is aggrieved is a question of fact for the trial judge, . . . which should not be reversed unless clearly erroneous."  Sheehan v. Zoning Bd. of Appeals of Plymouth, 65 Mass. App. Ct. 52, 54-55 (2005).

Here, the plaintiffs raise, among other concerns, issues of density, traffic, and noise -- all "typical" interests that G. L. c. 40A is designed to protect, Murchinson, 485 Mass. at

5

214, and thus we assume they have met that portion of the standing requirements. However, simply identifying a zoning violation or an interest protected by the G. L. c. 40A, § 17, is not the end of the analysis.

"[E]stablishing standing requires a plaintiff to do more than merely allege a zoning violation." Murchinson, 485 Mass. at 214. The plaintiffs must demonstrate that they will be harmed in a manner that is "different from general concerns shared by the rest of the neighborhood." Id. at 215. In short, the plaintiffs must show how the proposed project will directly affect the use and enjoyment of their property. See Dwyer v. Gallo, 73 Mass. App. Ct. 292, 297 (2008). Thus, for example, in Dwyer, even though abutters had identified the project's violations of the density provisions of the local bylaw, their standing was demonstrated only when they also established direct harm by describing "the close proximity of [the proposed structures] to [their] rear deck and sunroom," the loss of privacy already resulting from preliminary tree clearing, and their impaired views that affected their "privacy and use and enjoyment of their property." Id. Here, while we do not doubt that the plaintiffs have articulated concerns sought to be protected by G. L. c. 40A, they have failed to establish the direct harm to the use and enjoyment of their property necessary to establish standing.

Although as a rear abutter and an abutter to an abutter within 300 feet, the plaintiffs enjoyed a presumption of standing, see Marashlian v. Zoning Bd. of Appeals of Newburyport,421 Mass. 719, 721 (1996); Sheehan v. Zoning Bd. of Appeals of Plymouth, 65 Mass. App. Ct. 52, 54 (2005), that presumption of standing has been challenged and "the question becomes whether the evidence supports the plaintiffs' claims of aggrievement."[4] Murchinson, 485 Mass. at 213.

Turning first to Florio's claims, the judge found that Florio's property is undersized and undeveloped. No one presently inhabits the property. It is unclear whether it can be developed, but at the very least there was no evidence of an imminent plan to develop it. Although Florio testified that "there will be a lot more noise [at] the property and a loss of privacy for the property by having that deck up there because they're going to look right down . . . [on] us," she did not establish that anyone would be there to experience any such noise or loss of privacy. The judge essentially characterized her concerns as speculative, noting "[i]t is difficult for the

_____

[4] The plaintiffs do not meaningfully argue that the judge erred in finding that the defendants had successfully rebutted the plaintiffs' presumption of standing. Specifically, the defendants pointed out that Florio's lot was undersized and vacant, and that Novak failed to "demonstrate harm particular to [him] [and] different from general concerns shared by the rest of the neighborhood." Murchinson, 485 Mass. at 215.

7

court to fathom how the particular injuries alleged by Florio, namely increased density, the effect of the Project on light and air quality, overcrowding, and an increase fire risk, are applicable to Florio." The proposed project eliminates the encroachment onto Florio's small lot and satisfies the rear setback requirement, which can only enhance any chance Florio has to improve her lot. Moreover, the project design includes fire retardant materials and sprinkler systems in both structures. Finally, no one occupies the property that could be impacted by the imposing height of the proposed structures. Accordingly, we perceive no error, much less clear error, in the judge's finding that Florio failed to show that the project would harm her vacant property.

Turning next to Novak, the trust's home is approximately sixty feet away from the locus. Directly across the street from the trust's home is a parcel with multiple structures, one of which has a deck off the third floor overlooking the trust's property. The beneficiary of the trust testified that "[i]t's hardly noticeable from my view" and that there were no noise issues from it. In addition, that property contains multiple decks and outside patios, which the beneficiary conceded do not cause troublesome noise. Moreover, he agreed that his immediate neighbor to the east has a rear deck that is "very close" to his deck and that it creates no noise issue. Both of these

8

properties lie between the locus and the trust's property. Finally, the beneficiary agreed that he had not suffered detrimental noise from other decks in the area. In light of this testimony, credited by the judge, we discern no error in the board's and the judge's conclusion that Novak had not demonstrated harm to the trust's property some sixty feet away from noise and loss of privacy due to the proposed rooftop decks, and certainly none that was "different from general concerns shared by the rest of the neighborhood." Murchinson, 485 Mass. at 215.

As to traffic, the trustee, who bore the burden of establishing his standing, see Stone v. Zoning Bd. of Appeals of Northborough, 496 Mass. 366, 374 (2025), did not present a traffic study or quantify how two additional bedrooms would affect traffic on 10th street or in the area, particularly where ample offsite parking is planned. Similarly, as to fire safety concerns, the judge credited evidence from Daly's expert that "the proposed construction of the two structures compl[ies] with all building and fire codes and will be more fire retardant and safer than any of the older structures currently on" the locus.

On the record presented, the judge did not clearly err in finding that the plaintiffs failed to articulate a harm personal to them that is "more than minimal or slightly appreciable"

9

(quotation and citation omitted).  See <u>Murchinson</u>, 485 Mass. at 213.[5]

                                    <u>Judgment affirmed</u>.

                                    By the Court (Rubin,
                                      Brennan & Wood, JJ.[6]),

                                    *Paul Little*

                                    Clerk

Entered:  July 1, 2026.

---

[5] Given the result we reach, we need not address the plaintiffs' arguments regarding the merits of the special permit or their contention that Town Counsel's conflict of interest tainted the proceedings.

[6] The panelists are listed in order of seniority.